UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MARY CHRISTIE o/b/o
ROBERT JOSEPH CHRISTIE,
deceased,

      Plaintiff,

v.                              CASE NO. 6:24-cv-1167-RBD-SJH

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.
_____/

## REPORT AND RECOMMENDATION

**THIS CAUSE** is before me on referral for a report and recommendation on an appeal by Mary Christie, on behalf of Robert Joseph Christie, deceased, of an administrative decision denying an application under the Social Security Act ("Act") for Disability Insurance Benefits ("DIB"). In a decision dated February 27, 2024, the Administrative Law Judge ("ALJ") found that Mr. Christie had not been under a disability from August 10, 2012, the alleged disability onset date, through December 31, 2014, the date last insured. Tr. 2789-2806. For the reasons herein, I **recommend** that the Commissioner's decision be **affirmed**.

      **I.**      **Issue on Appeal**

Plaintiff argues a single issue on appeal: "The ALJ failed to apply the correct legal standards to Mr. Christie's testimony regarding his mental health impairments

and resulting limitations." Doc. 15 at 7 (emphasis removed). I recommend the argument lacks merit.

## II. Standard of Review

Plaintiff appeals the denial of Mr. Christie's applications for DIB under Title II of the Act, 42 U.S.C. § 401 *et seq.*[1] Under 42 U.S.C. § 405(g), judicial review "is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

The agency's factual findings are "conclusive" if "substantial evidence" supports them. *Biestek v. Berryhill*, 587 U.S. 97, 99 (2019). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* at 103 (citation omitted). Though requiring "more than a mere scintilla" of evidence, the threshold for this standard "is not high[,]" *id.*, and does not require a preponderance of the evidence, *Flowers v. Comm'r, Soc. Sec. Admin.*, 97 F.4th 1300, 1309 (11th Cir. 2024); *see also Parks ex rel. D.P. v. Comm'r, Soc. Sec. Admin.*, 783 F.3d 847, 850 (11th Cir. 2015). So long as "the ALJ's decision clears the low evidentiary bar[,]" a reviewing court must affirm even if it "would have reached a different result and even if a preponderance of the evidence weighs against the Commissioner's decision[.]" *Flowers*, 97 F.4th at 1309. Nor may a reviewing court

---

[1] The regulations under Title II are located at 20 CFR pt. 404.

"decide the facts anew, make credibility determinations, or re-weigh evidence." *Id.* at 1306 (quotation omitted); *see also Rodriguez v. Soc. Sec. Admin.*, 118 F. 4th 1302, 1315-16 (11th Cir. 2024); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).

The same deference does not attach to conclusions of law. *See Flowers*, 97 F.4th at 1304, 1306; *Martin*, 894 F.2d at 1529. A "failure to apply the correct legal standards or to provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed mandates reversal." *Martin*, 894 F.2d at 1529; *see also Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

### III.   The ALJ's Decision

Under the Act's general statutory definition, a person is considered disabled if unable to engage in substantial gainful activity by reason of a medically determinable impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of at least 12 months. *See* 42 U.S.C. § 423(d)(1)(A).[2] In making a disability determination, the Social Security Administration generally uses a five-step sequential process. 20 C.F.R. § 404.1520(a)(4).[3]

---

[2] Because the definitions of disability under Title II and Title XVI of the Act are the same, cases under one statute are generally persuasive as to the other. *See Jones v. Astrue*, No. 3:10-cv-914-J-JBT, 2011 WL 13173806, at *2 n.2 (M.D. Fla. Oct. 17, 2011).

[3] At step one, the person must show the person is not engaged in substantial gainful activity. At step two, the person must show the person has a severe impairment or combination of impairments. At step three, the person may show the impairment or combination of impairments meets or equals the severity of one of the listings in the appendix of the applicable regulations. Absent such a showing, at step four, the person must show the person cannot perform the person's past relevant work given the person's residual functional capacity ("RFC"). Step five, at which the burden temporarily shifts to the Commissioner, asks whether there are a significant number of jobs in the national economy the person can perform

In the decision under review, [4] the ALJ applied this five-step sequential process. Tr. at 2794-2806.[5] At step one, the ALJ found that Mr. Christie had not engaged in substantial gainful activity from August 10, 2012, the alleged disability onset date, through December 31, 2014, the date last insured. Tr. at 2794. The ALJ found at step two that Mr. Christie through the date last insured "had the following severe impairments: migraines; chronic obstructive pulmonary disease (COPD); cervical degenerative disc disease; post-traumatic arthritis in the right knee; depressive disorder; and post-traumatic stress disorder (PTSD) (20 CFR 404.1520(c))." *Id.* at 2794-95 (emphasis removed). At step three, the ALJ found that Mr. Christie did not through the date last insured have an impairment or combination of impairments that meets or equals a listed impairment. *Id.* at 2795-96. The ALJ found that Mr. Christie through the date last insured had the following residual functional capacity ("RFC"):

> to perform a range of light work as defined in 20 CFR 404.1567(b). Specifically, the claimant could lift and carry 20 pounds occasionally and 10 pounds frequently; sit for up to 6 hours in an 8-hour workday; stand for up to 6 hours; walk for up to 6 hours; push and pull as much as they can lift and carry; occasionally climb ramps and stairs; never climb

---

given the person's RFC, age, education, and work experience. If it is determined at any step the person is or is not disabled, the analysis ends without proceeding further. *See* 20 C.F.R. § 404.1520(a)(4); *Flowers*, 97 F.4th at 1308; *Jacob v. Comm'r of Soc. Sec.*, No. 8:22-cv-2435-CEH-TGW, 2024 WL 3548902, at *3-4 (M.D. Fla. July 26, 2024).

[4] This case has a long procedural history summarized by the parties in their briefing and not repeated here except to the extent necessary to address the single issue raised by Plaintiff in this appeal. Doc. 15 at 1-4; Doc. 20 at 1-2.

[5] Title II of the Act "provides old-age, survivor, and disability benefits to insured individuals irrespective of financial need." *Smith v. Berryhill*, 587 U.S. 471, 475 (2019) (quotation omitted). The ALJ found Mr. Christie met the insured status requirements through December 31, 2014. Tr. at 2794.

> ladders or scaffolds; frequently balance, stoop and crouch; never crawl; occasionally kneel; avoid unprotected heights or moving machinal parts; have no concentrated exposure to humidity, dust fumes, or gases; could not work in an environment with temperature extremes; limited to routine and repetitive tasks; with no more than frequent interaction with supervisors, co-workers, and occasional interaction with the public; the claimant would be off-task 10% of an 8-hour workday.

*Id.* at 2796-97 (emphasis removed). The ALJ found at step four that Mr. Christie was unable through the date last insured to perform any past relevant work, but found at step five that through the date last insured jobs existed in significant numbers in the national economy that Mr. Christie could perform, such that he had not been under a disability from the alleged date of onset though the date last insured. *Id.* at 2804-05.

## IV.   Analysis

Plaintiff argues on appeal that "[t]he ALJ failed to apply the correct legal standards to Mr. Christie's testimony regarding his mental health impairments and resulting limitations." Doc. 15 at 7 (emphasis removed). With respect to this issue, the ALJ stated as follows:

> The undersigned has fully considered the claimant's testimony from the prior hearings as well as reports submitted to the Social Security Administration (Exhibits 3E; 4E; 5E; 19E; 20E; 27E; 28E). At the most recent hearing, the claimant's ex-wife testified. She stated that after the claimant's accident he did not work. He became withdrawn and unenergetic. He had problems with self-care. As far as she was aware, during the relevant period, the claimant was not receiving mental health treatment. She was also unaware if the claimant was receiving treatment for migraine during the relevant period. The claimant went to his doctor appointments alone and that he did not tell her what the doctors said. He had knee problems so could not stand very long. The claimant would do some dishes or laundry on occasion but did not do most of the household chores. He spent a lot of the time watching old western movies. The

> claimant isolated himself and did not want to leave the house. However, he would talk to neighbors and go grocery shopping sometimes.
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are not entirely consistent with the overall record as discussed herein.

Tr. at 2797-98. The ALJ further stated:

> Mentally, the claimant underwent a consultative psychological examination in August 2012 by Vivian Roy Ph.D. Mental status exam findings noted adequate concentration and attention. Immediate, short term and long-term memory were all normal. The claimant was alert and oriented. His thinking was lucid, and goal directed. His mood was dysphoric and sometimes tearful. There was no evidence of a thought disorder. Insight and judgement were good. Diagnoses included a depressive disorder, and alcohol dependence. Dr. Roy assessed a global assessment of functioning rating (GAF) of 60. Dr. Roy did not provide any other specific psychological functional limitations (Exhibit 6F).
>
> In October 2012, Eduardo Ysern, Ph.D., performed a psychological evaluation at the request of the claimant's Worker's Compensation insurance carrier. The mental status examination revealed that claimant was very frustrated and at times became very tearful, but he was alert, coherent, and logical. There were no hallucinations, delusions, paranoia, or any evidence of psychosis. However, his affect was markedly depressed, and his mood was irritable. Orientation and memory were grossly normal. Dr. Ysern continued to see the claimant into November 2013. In November 2012, Dr. Ysern noted a disheveled appearance and poor concentration. In December 2012, Dr. Ysern noted low and garbled speech with an irritable depressed mood and assessed a GAF of 50. In 2013, Dr. Ysern indicated the claimant was generally disheveled with variable memory ranging from normal to poor. Similarly, insight and judgment ranged from good to fair, and concentration was poor. Mood was irritable and depressed. In August 2013, the claimant was found with

marked psychomotor retardation. However, by November 2013, such a finding psychomotor retardation was not documented and Dr. Ysern noted some mild improvement in the claimant secondary to resuming psychotropic medications (Exhibits 8F; 14F; 15F; 16F).

The claimant's psychotropic medications were restarted in October 2013, when the claimant reestablished care at the VA and the claimant began seeing Mariposa McCall, M.D. Dr. McCall diagnosed the claimant with a depressive disorder and PTSD. Medications required adjustment due to some causing GI issues. At the initial evaluation, Dr. McCall found fair judgment and insight, normal remote memory, forgetful at times recent memory, a restricted affect, brief concentration, and depressed/anxious mood. She assessed a GAF of 45. In VA records, mental status examination findings varied. The claimant was noted as slightly disheveled or with signs of self-neglect but at other times was found casually or appropriately groomed. Recent and remote memory ranged from grossly intact to normal to limited or forgetful. Attention or concentration ranged from distracted to focused. Psychomotor findings were usually calm. Insight and judgement also varied from superficial to fair to good. Mood was generally depressed and anxious. The claimant reported symptoms of lowered interest, motivation, and mood. By November 2014, the claimant reported improved sleep and affect was better. However, he continued too socially isolate. In January 2015, the claimant was noted with an improved mood, but still engaging in few activities (Exhibits 17F/119-25; 19F/188, 189, 193, 196, 197 209, 210, 213, 222, 225, 230, 242, 247, 251, 270, 300, 353).

Overall, during the relevant period, the mental health evidence documents ongoing issues primarily with depression. The claimant's mental health impairments impacted his memory, attention, concentration, memory, insight and judgement varying from poor to normal. The symptoms also impacted the claimant's self-care with the claimant presenting to appointments at times disheveled. However, at other times, his grooming was appropriate. The claimant reported low motivation, isolation and doing little. However, hearing testimony and other evidence indicate the claimant engaged is some activities including gardening, painting, yard work, and splitting the household chores with his wife. Further, despite reporting isolation, the claimant is generally noted by providers as cooperative. He also would talk to his neighbors, may occasionally grocery shop, occasionally play golf with his brother when his brother would visit, and was able to travel out of state to visit family and go to a Gem mine for several hours. He also remained able to

>drive and would drive his wife to and from work on days he needed the car.
>
>Given this record, the undersigned finds, that mentally, on a regular and continuing basis, during the relevant period, the claimant could perform only routine and repetitive tasks, and with no more than frequent interaction with supervisors, co-workers, and occasional interaction with the public. These restrictions are reasonable given the objective findings in the record. The claimant's memory, concentration and attention varied to the degree that he could not have been expected to engage in detailed or complex tasks on a routine basis, despite demonstrating those abilities at times in the activities in which he engaged (such as travelling, golfing, painting, driving, and gardening). Therefore, the claimant is limited to only routine and repetitive tasks.
>
>In terms of social and adaption issues, the claimant consistently reported social isolation, had a depressed mood, and demonstrated adaption issues in that the claimant's grooming was at times disheveled. Nevertheless, the claimant was largely cooperative with providers. He would also interact with neighbors, visit family, and occasionally go shopping. Given these issues the undersigned finds, the claimant could have only occasional interaction with the public but could frequently interact with supervisors and co-workers. Finally, in considering the mental health symptoms along with the migraine headaches, the undersigned reasonably finds these issues may result in concentration lapses such that the claimant would have been off-task 10% of an 8-hour workday.

Tr. at 2799-2801.

Plaintiff does not genuinely dispute that the foregoing statements accurately summarize and are supported by the record. Doc. 15 at 9-11. Instead, Plaintiff argues that the reasons offered by the ALJ "are not based on the correct legal standards." *Id.* at 10. Specifically, Plaintiff contends that (i) "[t]he ALJ improperly rejected Mr. Christie's testimony regarding his mental health impairments and limitations based on the fact that at some appointments he had 'normal' findings and appropriate

8

grooming[,]" which Plaintiff contends "does not detract from the significant mental status examination findings that were documented by his treating providers"; and (ii) "[t]he ALJ further improperly rejected Mr. Christie's testimony based on his ability to engage in limited activities." *Id.* at 11, 14. Plaintiff's arguments are unavailing.

As discussed above, and acknowledged by both parties, the ALJ summarized the objective medical evidence, which was not entirely consistent with Mr. Christie's subjective complaints and claims, and which included some findings that tended to support, and others that tended to not support, Mr. Christie's allegations. Tr. at 2799-2800; *see also* Doc. 15 at 11; Doc. 20 at 7. As also discussed above, and acknowledged by both parties, the ALJ further summarized various life activities of Mr. Christie that were not entirely consistent with his subjective complaints and claims, including for example that he engaged in gardening, painting, yard work, some household chores, some grocery shopping, talking with neighbors, occasionally playing golf with his brother, and occasionally traveling out of state. Tr. at 2800; *see also* Doc. 15 at 13; Doc. 20 at 8.

And notably, after discussing the conflicting evidence, the ALJ accounted for Mr. Christie's PTSD and depression, which he had found as severe impairments, just not to the extreme degree of limitations claimed by Mr. Christie. Tr. at 2794-95, 2800-01. After chronicling Mr. Christie's ongoing mental health issues, primarily with depression, the ALJ, considering the entire record, concluded "that mentally, on a regular and continuing basis, during the relevant period, the claimant could perform

only routine and repetitive tasks, and with no more than frequent interaction with supervisors, co-workers, and occasional interaction with the public." *Id.* at 2800-01. In so doing, the ALJ acknowledged that Mr. Christie "could not have been expected to engage in detailed or complex tasks on a routine basis, despite demonstrating those abilities at times in the activities in which he engaged (such as travelling, golfing, painting, driving, and gardening). Therefore, the claimant is limited to only routine and repetitive tasks." *Id.* at 2801. The ALJ further found that the restrictive limitations provided were consistent with and necessary due to Mr. Christie's social and adaption issues. *Id.* And, to further account for Mr. Christie's mental-health symptoms, the ALJ concluded that his "issues may result in concentration lapses such that the claimant would have been off-task 10% of an 8-hour workday." *Id.* The ALJ incorporated these conclusions into a restrictive RFC—one so restrictive that it precluded Mr. Christie from his past work. *Id.* at 2796-97, 2804-05.

Contrary to Plaintiff's contentions, the ALJ offered adequate and appropriate reasons, supported by substantial evidence, for discounting Mr. Christie's subjective complaints. And, in doing so, the ALJ did not err by citing, among other evidence, (i) some normal findings and appropriate grooming and interactions in clinical settings; and (ii) daily living activities. *See Funk v. Kijakazi*, No. 3:20-cv-460-PDB, 2021 WL 4520502, at *4 (M.D. Fla. Oct. 4, 2021) ("In arguing that the ALJ erred in rejecting Funk's testimony about his mental impairments, Funk contends the ALJ's findings are not supported by substantial evidence. Contrary to Funk's contention, the ALJ's

10

findings are supported by substantial evidence. The substantial evidence includes benign examinations, improvement with medication, and Funk's daily activities ….."(internal citation omitted)); *Wieand v. Berryhill*, No. 8:17-cv-2484-T-CPT, 2019 WL 1376707, at *3 (M.D. Fla. Mar. 27, 2019) (holding "the ALJ properly articulated adequate reasons for discrediting the Plaintiff's allegations regarding her mental impairments" which reasons included *inter alia* some "normal findings" during "mental examinations" and "activities of daily living"); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1212 (11th Cir. 2005); *Gadd v. Comm'r of Soc. Sec.*, No. 6:22-cv-932-KCD, 2023 WL 3560537, at *3-4 (M.D. Fla. May 19, 2023); *Gil v. Comm'r of Soc. Sec.*, No. 6:20-cv-1850-LHP, 2022 WL 445498, at *8 (M.D. Fla. Feb. 14, 2022).

In support of Plaintiffs arguments, Plaintiff relies on *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245 (11th Cir. 2019) and *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094 (11th Cir. 2021). *See* Doc. 15 at 10-14. Such reliance is misplaced. At the outset, it is not apparent that the analysis from *Schink* or *Simon* is even applicable here. Each of those cases involved the treating-physician rule, which, where applicable, requires that "a treating physician's conclusions must be given 'substantial or considerable weight' unless there is 'good cause' to discount them." *Simon*, 7 F.4th at 1104 (citation omitted); *see also Schink*, 935 F.3d at 1259. But the treating-physician rule is not at issue here. Plaintiff's sole issue on appeal pertains instead to the ALJ's consideration of Mr. Christie's subjective complaints. For this reason, *Schink* and *Simon* are distinguishable. *See Gil*, 2022 WL 445498, at *8 n.12; *see also Leigh v. Comm'r of Soc. Sec.*, No. 6:23-cv-

11

212-DCI, 2024 WL 939596, at *2 (M.D. Fla. Mar. 5, 2024); *Chunn v. Kijakazi*, No. 5:20-cv-01982-LSC, 2022 WL 4110902, at *6 (N.D. Ala. Sept. 8, 2022)

That is not the only reason Plaintiff's arguments are misplaced, however. The cases on which Plaintiff relies are also factually distinguishable. To reset, as discussed above, the ALJ (i) thoroughly and fairly reviewed the medical evidence, testimony as to Mr. Christie's symptoms, and activities of his daily living; (ii) found that Mr. Christie had severe impairments, including PTSD and depression; and (iii) accounted for Mr. Christie's mental impairments and formulated a restrictive RFC through which he was considered unable to perform any past relevant work.

This case thus differs substantially from *Schink* and *Simon*. *See, e.g.*, *Vergara v. Comm'r of Soc. Sec.*, No. 22-11671, 2023 WL 5814433, at *3 n.* (11th Cir. Sept. 8, 2023) ("[U]nlike in *Schink*, where the ALJ concluded that the claimant's bipolar disorder was no severe impairment based on evidence that the claimant's condition improved with treatment[,] the ALJ here concluded that [the plaintiff's] bipolar disorder constituted a severe impairment."); *Ross v. Comm'r of Soc. Sec.*, 794 F. App'x 858, 866 n.10 (11th Cir. 2019) ("[T]he ALJ in *Schink* concluded that the claimant 'did not suffer from a severe mental impairment and could return to his past job as a car salesman' and entirely omitted the claimant's mental impairment when assessing his residual functioning capacity. This constitutes a significant difference between *Schink* and [this] case—here, the ALJ concluded that [the plaintiff] did suffer from severe mental impairments, and accounted for those impairments when assessing his RFC. It was on

this basis that the ALJ in our case formulated a very restricted RFC … such that the ALJ concluded that [the plaintiff] could not perform any of his past relevant work, and limited [his] capacity to jobs requiring no public contact and only occasional interaction with coworkers." (citations omitted)); *Farrat v. Kijakazi*, No. 22-22491-cv, 2024 WL 991787, at *13-14 & n.7 (S.D. Fla. Jan. 22, 2024) (finding *Simon* and *Schink* not "persuasive or applicable" because *inter alia* the ALJ had recognized and accounted for the plaintiff's depression, anxiety, and PTSD as severe impairments), *report and recommendation adopted*, 2024 WL 987024 (S.D. Fla. Mar. 7, 2024); *Risch v. O'Malley*, No. 3:23-cv-8077-MCR-HTC, 2024 WL 2846725, at *2 (N.D. Fla. June 5, 2024) ("But in *Schink*, the ALJ provided *no analysis or findings* about the claimant's mental capacities[,]" which is "clearly not the situation here[.]"); *Gil*, 2022 WL 445498, at *8 n.12 ("[I]n *Simon*, the ALJ failed to discuss the claimant's most serious symptoms of mental impairments in the decision, 'which verge[d] on a blatant mischaracterization of [the] medical records.' Here, to the contrary, Claimant is not really arguing that the ALJ failed to consider pertinent medical records (indeed, as discussed, many of the records on which Claimant relies are cited by the ALJ in the decision). Instead, Claimant appears to merely disagree with the ALJ's conclusions based on those medical records. But, because the record demonstrates that the ALJ considered Claimant's condition as a whole, the Court rejects Claimant's … assignment of error.").

Ultimately, Plaintiff's brief generally recites Plaintiff's view of evidence the ALJ could have weighed differently to reach a different conclusion. *See generally* Doc. 15. That is of no moment. It matters not if a reviewing court "would have reached a different result" or "even if a preponderance of the evidence weighs against the Commissioner's decision[.]" *Flowers*, 97 F.4th at 1309. Nor may a reviewing court "decide the facts anew, make credibility determinations, or re-weigh evidence." *Id.* at 1306; *see also Rodriguez*, 118 F.4th at 1315-16; *Martin*, 894 F.2d at 1529. Because the ALJ's decision clears "the low evidentiary bar" of substantial evidence, it is due to be affirmed. *See Flowers*, 97 F.4th at 1309; *see also Cruz v. Comm'n of Soc. Sec.*, No. 2:22-cv-603-KCD, 2023 WL 7487422, at *4 (M.D. Fla. Nov. 13, 2023); *Martin v. Comm'r of Soc. Sec.*, No. 8:22-cv-1435-JSS, 2023 WL 3644419, at *2, 9 (M.D. Fla. May 25, 2023).

## V.     Conclusion

Accordingly, I respectfully **recommend** the Court enter an Order:

1.     **Affirming** the Commissioner's decision; and

2.     **Directing** the Clerk of Court to enter judgment accordingly and close the file.

## NOTICE TO PARTIES

"Within 14 days after being served with a copy of [a] recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve

and file specific objections to the proposed findings and recommendations impacts the scope of review by a district judge and by an appellate court. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(C); 11th Cir. R. 3-1. "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1)(C). "A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation ... waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions[.]" 11th Cir. R. 3-1.

**DONE AND ENTERED** in Jacksonville, Florida, on January 24, 2025.

_____
Samuel J. Horovitz
United States Magistrate Judge

Copies to:

The Honorable Roy B. Dalton, Jr., United States District Judge

Counsel of Record